## HARDY v. NORTH BUTTE MINING CO.

District Court, D. Montana. July 13, 1927.

No. 509.

1. **Corporations ⬳615—Simple contract creditor cannot maintain suit to wind up corporation.**

A bill by a simple contract creditor does not invoke the jurisdiction of a court of equity to appoint receivers to wind up the affairs of a corporation.

2. **Corporations ⬳621(2)—Corporate secretary cannot consent to appointment of receiver.**

Secretary of corporation is without power to give its consent to appointment of receivers to liquidate its affairs and terminate its life.

**3. Corporations ⊜621(2)—Bill by small simple contract creditor held not to give court jurisdiction to appoint receivers to wind up corporation.**

A bill by a simple contract creditor, holding a note for $6,500, eight days past due, against a mining corporation, alleging on information and belief that the corporation has for years conducted extensive and profitable mining operations, but that at the present time, owing to prevailing low prices of metals, its operations are at a loss, that it owns property exceeding in value $8,000,000, with an indebtedness of $650,000, chiefly in outstanding bonds, and that suits against it are "threatened," *held* not to show insolvency obviously collusive, and not to give a court of equity jurisdiction to appoint receivers nominated by the secretary of the corporation, with power to operate its mines, issue receivers' certificates to be a first lien on the property, and to wind up its affairs.

**4. Receivers ⊜16—Receivers should not be appointed, except on strong showing of necessity.**

The discretion of a court to appoint receivers to take property from the possession of its owners should be exercised only on a strong showing in bona fide and genuine litigation, and when absolutely necessary to preserve property for those who may ultimately be proved to be entitled to it.

**5. Courts ⊜519—Comity cannot impose inequitable receivership on court, nor require its perpetuation.**

Comity cannot impose a burdensome and inequitable receivership on any court, nor require that it be perpetuated.

In Equity. Suit by Francis H. Hardy against the North Butte Mining Company. On order to show cause. Order appointing receivers vacated, as improvidently made, receivers discharged, and suit dismissed.

E. M. Lamb, of Butte, Mont., and Warren E. Greene, of Duluth, Minn., for plaintiff.

Carl J. Christian, of Butte, Mont., for defendant.

BOURQUIN, District Judge. This is one of those too common receiverships which, with like improvident injunctions, are in abuse of the powers of the courts, work injustice, visit scandal and reproach upon the judiciary, and incite the storms of judicial recall, which persistently lower along the political horizon. June 8, 1927, in behalf of himself and all who might join, plaintiff filed original complaint in the federal court at Duluth, alleging he is a citizen of Illinois and owner of defendant's three-months note for $6,500, unpaid at maturity, June 1, 1927.

Other allegations are on information and belief, as follows: That defendant is a Minnesota mining corporation having its principal place of business in Duluth; that it owns 1,361 acres of mines at Butte, and of the value of more than $8,500,000, $50,000 of cash and accounts receivable, and $100,000 of other personal property; that its debts are $500,000 of bonds, $75,000 of notes, and $76,000 of current liabilities; that for many years defendant extensively and profitably operated, but at the present time it is mining 3,700 tons of ore a month at a loss, owing to the prevailing low prices of metals; that all interest due on the bonds has been paid, but, though in 1926 defendant paid or "retired" $155,000 of the bonds, defendant has not, and cannot secure, money to pay $115,000 of the bonds past due, and its other obligations due and accruing; that many creditors are threatening suit, and actions at law may be by them instituted, and inequitable preferences secured, to the irreparable damage of creditors and 6,000 stockholders of defendant. The prayer is a receivership of plenary powers, operation of the mines, sale and distribution of all assets, and dissolution and winding up of defendant.

At the same time and place were filed two documents, one purporting to be defendant's answer, "submitting" to jurisdiction and admitting the allegations of the complaint, and one purporting to be its consent to the "appointment * * * of John W. Neukom, of Duluth, and Matt L. Essig, of Butte, as receivers." These documents are signed "North Butte Mining Company, by Frederic R. Kennedy, Secretary." Thereupon, in acceptance of the qualified consent, the court appointed the receivers so stipulated, with full powers to operate, manage, and administer defendant's property, to employ counsel, and as a first lien on said property to issue $150,000 of receiver's certificates of indebtedness, but only $25,000 thereof without further order of the court.

In the meantime, both judges for the district of Montana were absent from that jurisdiction, and before said complaint was filed as aforesaid one of them in Chicago was inspired to request some other judge be appointed to hear the instant ancillary proceeding; and to that end and on June 7, 1927, one of the federal judges of Oregon was appointed to appear in Butte, with understanding that he would do so on June 10, 1927, as he did. At the latter time and place these ancillary proceedings were instituted on like complaint and answer, and the receivers aforesaid, by an order like to that aforesaid, were likewise herein appoint-

ed. In neither court were any conditions imposed upon or bond required from plaintiff.

July 6, 1927, this court, the writer presiding, was moved by plaintiff's counsel, then also the receivers' counsel, to confirm certain of the receivers' acts. Thus advised of the premises, of its own motion the court on July 10 ordered the parties to show cause why (1) the order of appointment should not be vacated for that it was improvidently made, or/and (2) the receivership should not be terminated, and the suit dismissed, for that the complaint is without equity, and alleges no valid ground warranting the court to hold or operate defendant's mines, or to impede any creditor in prosecution of his claim.

At the hearing the parties limited themselves to the argument of plaintiff's counsel that the complaint discloses insolvency, and suits and unequal recoveries likely, sufficient to support the receivership. It is noted that plaintiff verified the original complaint on June 3, 1927, and in Illinois; that Warren E. Greene, of the Alworth Building, Duluth, is his counsel; that Kennedy verified the answer and consent on June 8, 1927, in Duluth, and William E. Tracy, of the building aforesaid, is defendant's counsel; that very expeditiously and on June 10, 1927, Greene, Kennedy, and Neukom appeared in the proceedings in Butte; and that Essig is a $300 per month clerk in defendant's Butte office.

[1] If it be granted that these questionable pleadings disclose insolvency, that does not suffice to invoke equitable jurisdiction and receivership at the suit of a simple contract creditor. Lion, etc., Co. v. Karatz, 262 U. S. 77, 43 S. Ct. 480, 67 L. Ed. 871.

[2] In so far as defendant's consent is relied upon and might serve, be the court amiable and ambitious to embark upon a mining venture, it is sham and void upon its face, in that a corporate secretary has no authority to thus displace the officers and management chosen by stockholders, and to thus pave the way for corporate death.

[3] Passing that, however, the complaint is altogether wanting in substance and too unreliable to justify the court to oust the corporate management and itself take over and operate the corporation's properties, to hinder and delay creditors. In no just sense is there insolvency, when, as here, the assets exceed liabilities some 14 times, or near $8,000,000, the corporation for many years has been of honest, efficient, and profitable operation, even though there may be some present inability, by reason of low current values of minerals produced, to promptly pay debts due.

And so far as threatened suits are concerned, it will be proper time to take them into account when, if ever, they materialize, rather than to accept this plaintiff's information and belief in attempted excuse of his own precipitancy, even if in a race to be first—for what, the emoluments of a receivership? So far, no other suit has been brought; no one has joined plaintiff. Moreover, there is nothing to warrant the court to hinder and delay any creditor of defendant. Receiverships are extraordinary remedies, too often abused and made ordinary. [4] It is a serious matter for a court to oust owners, and possess and operate their properties by the hand, arm, agent, or receiver of the court. The court's discretion to that end should be exercised only on a strong showing in bona fide and genuine litigation, when absolutely necessary to preserve property for those who may ultimately be proven to be entitled to it. Corporations are not entitled to receiverships, save where persons would be; and neither are at liberty to invoke receivership merely to stay creditors' actions, which might be embarrassing, to gain a breathing spell, when debts are pressing and money scarce.

The instant case lacks the necessary elements aforesaid. On the contrary, the suit is friendly, lacks good faith, presents no issue for litigation, is obviously collusive between an amiable creditor and quasi "dummy" plaintiff, and some faction of the corporation, to gain some inequitable advantage and to accomplish some ulterior purpose.

Often, in like cases, the strategy is to procure some complaisant small creditor to pose as a friendly plaintiff, to provide him with counsel from defendant's staff, to secure stranger counsel for defendant, to suggest other of defendant's counsel for receivers, and to extend the activities of plaintiff's counsel to embrace like service for the receivers. It would be at least interesting to know how fully that strategy applies to the instant case. Here Kennedy or defendant virtually dictated whom the courts should appoint for their own hand, arm, agent, receiver. For the consent of Kennedy, or defendant, and without which was no equity jurisdiction to appoint receivers, was conditioned upon the appointment of these receivers by Kennedy named.

No court should be thus coerced, but should exercise its discretion. And why should any of those whose administration

has involved the corporation in difficulties be trusted by the court as its agent and best able to extricate the corporation therefrom? Why should courts so generally sign on the dotted line?

Plaintiff has an adequate remedy at law. His tender solicitude for others may be affecting, but appeals none to a court of equity, and "an onion holds the tears which should water his grief."

In the very beginning, his comparatively small claim imposes costs and expenses which will exceed it many times. In this, no equity appears. Already $150,000 receivers' certificates are authorized, and who knows how much more might be required? For receiverships as jobs, life work, and careers fairly clutter up the courts, drag on like Jarndyce v. Jarndyce, enrich participants, consume estates, and defeat justice. See Penner's Case (D. C.) 293 F. 766.

These certificates to carry on business are not a prior lien to the bonds, despite the courts' orders that they will be. The orders are void. See Nowell v. International Trust Co. (C. C. A.) 169 F. 505.

[5] In respect to comity, it cannot impose a burdensome and inequitable receivership on any court, nor require that it be perpetuated. Comity always yields to sound discretion and justice. At most, it stands not in the way of an order terminating a receivership.

The receivers are discharged, the suit is dismissed, and the receivers ordered to render final account and report herein within 10 days.